952 F.2d 375
 PINNACLE PORT COMMUNITY ASSOCIATION, INC., Plaintiff-Appellee,
v.
Charles ORENSTEIN, a Canadian individual, d/b/a Pinnacle
Port Developers, Defendant-Appellant,
Southmark Corporation, a Georgia Corporation, Defendant.
 No. 90-4003.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 30, 1992.
 
 Donald H. Partington, Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, Fla., for NA Mortg.
 Edmund D. Quintana, Burke & Blue, P.A., Panama City, Fla., for Orenstein.
 Jennifer W. Fletcher, Griffin, Cochrane, Marshall & Elger, Atlanta, Ga., for plaintiff-appellee.
 Appeals from the United States District Court for the Northern District of Florida.
 Before JOHNSON*, MORGAN and SMITH**, Senior Circuit Judges.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 This case arises on appeal following the denial of motions for judgment notwithstanding the verdict (JNOV) and for a new trial after a jury awarded plaintiff nearly two million dollars in compensatory damages against defendant because defendant failed to make contracted repairs to a condominium development.
 
 I. STATEMENT OF THE CASE
 A. Background Facts
 
 2
 Defendant Orenstein in 1974 assumed a second mortgage for a condominium project in lieu of the project's foreclosure. When in April of 1979 the project was substantially completed and most of its units were sold, the Pinnacle Port Community Association (Association) reported various problems including the fact that the stucco walls leaked. Orenstein subsequently agreed to make repairs and to post $200,000 as security for the repairs. The North American Mortgage Investors (NAMI), who had provided some of the financing for the project, eventually initiated the repairs in July of 1979. Dissatisfied with the repairs, the Association sued Orenstein in state court. In settlement of the suit the Association released Orenstein from all claims that had been or could have been made against him in return for Orenstein's agreement to complete the repairs in progress within 180 days. While Orenstein did little or nothing pursuant to the stipulation, NAMI continued to pay for the repair work. The repairs were supposedly finished in December of 1979. The walls again leaked, however, during the first rainstorm in January of 1980.
 
 
 3
 NAMI stopped financing the repairs in August of 1981. The Association subsequently hired its own experts, who recommended entirely new walls and supports. The Association ultimately paid four million dollars for the changes.
 
 B. Procedural History
 
 4
 On September 12, 1984, the Association filed suit against Orenstein and NAMI alleging breach of contract and negligence. The defendants moved for summary judgment on both claims. The district court granted summary judgment on all claims except the breach of contract claim against Orenstein. The Association appealed and this Court reversed and remanded the cause of action. Pinnacle Port Community Ass'n v. Orenstein, 872 F.2d 1536 (11th Cir.1989). The Association subsequently dropped its negligence claims. On remand the jury returned a verdict against each of the defendants for $1.9 million. The district court denied defendants' motions for judgment notwithstanding the verdict (JNOV) and for a new trial. Orenstein now brings this appeal.[1]
 
 II. ANALYSIS
 A. Statute of Limitations
 
 5
 Orenstein argues that the action was barred by the statute of limitations. The district court ruled and the parties on appeal agree that the four-year statute of limitations for actions relating to improvements applies:
 
 
 6
 (3) WITHIN FOUR YEARS
 
 
 7
 ....
 
 
 8
 (c) An action founded on the design, planning, or construction of an improvement to real property, with the time running from the date of actual possession by the owner, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his employer; except that, when the action involves a latent defect, the time runs from the time the defect is discovered or should have been discovered with the exercise of due diligence....[2]
 
 
 9
 We reject the district court's decision to apply this statute. The district court's choice of the applicable statute of limitations is a question of law that this Court may review de novo. Wheeler v. City of Pleasant Grove, 896 F.2d 1347, 1350 (11th Cir.1990); Lumber & Wood Products, Inc. v. New Hampshire Ins. Co., 807 F.2d 916, 918 (11th Cir.1987). The parties' failure to raise this issue on appeal does not preclude our review. Olson v. Superior Pontiac-GMC, Inc., 776 F.2d 265, 267 (11th Cir.1985).
 
 
 10
 The four-year statute does not appear to encompass contracts for mere repairs. The statute is directed only to "[a]n action founded on the design, planning, or construction of an improvement...." Fla.Stat.Ann. § 95.11(3)(c) (West 1979) (emphasis added). When reenacting this statute in 1980, moreover, the Florida legislature in an unusual preamble employed only the term "improvement" to denote the type of work affected.[3] Although the statute does not define "improvement," the Florida Supreme Court in a different context has defined an improvement as " '[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than merely repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.' " Hillsboro Island House Condominium Apartments, Inc. v. Town of Hillsboro Beach, 263 So.2d 209, 213 (Fla.1972) (quoting Black's Law Dictionary 890 (4th ed. 1969)) (emphasis added).
 
 
 11
 The stipulated repairs were intended not to enhance the assumed value of the property but to restore the walls to their original watertight state.[4] The contracted work, then, was in the nature of repairs. See Black's Law Dictionary 1167 (5th ed. 1979) ("The word 'repair' contemplates an existing structure or thing which has become imperfect, and means to supply in the original structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be.").[5]
 
 
 12
 We note that the four-year statute of limitations applicable to improvements might still apply if the contract for repairs arose directly from the construction of the condominiums. The contract action might then be characterized as "an action founded on ... an improvement...." Fla.Stat.Ann. § 95.11(3)(c) (West 1979); see Dubin v. Dow Corning Corp., 478 So.2d 71, 72 (Fla. 2 Dist.Ct.App.1985) ("an action" means " 'any action' arising out of improvements to real property, whether founded on contract [or otherwise]"). The itemized repairs at issue, however, were undertaken pursuant to the settlement of a court action. They thus arise only secondarily from the construction of the "improvement"--the condominiums. Significantly, all cases construing this statute involve problems arising directly from the construction of buildings or other valuable additions or enhancements to the property. See, e.g., Almand Constr. Co., Inc. v. Evans, 547 So.2d 626 (Fla.1989) (action against builder of home to recover for structural damage caused by settling); Dubin v. Dow Corning Corp., supra, 478 So.2d 71 (suit against roof manufacturer and company that had constructed building for damages stemming from leaking roof); Kelley v. School Bd., 435 So.2d 804 (Fla.1983) (action against architects, contractors and manufacturers for damages for roof leakage in newly constructed buildings).
 
 
 13
 Because the contracted repairs do not qualify as "improvements," and arise primarily from a contract unrelated to the construction of the condominiums, we find that Section 95.11(2)(b),[6] which places a limit of five years on contract actions, is applicable.[7] Orenstein's earliest claim for breach of the contract is immediately after it was signed, or October of 1979. Accepting this assertion arguendo, the Condominium Association timely filed its complaint in September of 1984.
 
 B. Damages
 
 14
 Orenstein appeals the district court's denial of his motion for judgment notwithstanding the verdict (JNOV) and for a new trial on the issue of damages. Motions for JNOV challenge the sufficiency of the evidence supporting the verdict of the jury. Hessen v. Jaguar Cars, Inc., 915 F.2d 641, 644 (11th Cir.1990). Denial of a motion for a JNOV is a question of law subject to de novo review. Finch v. City of Vernon, 877 F.2d 1497, 1502 (11th Cir.1989). The reviewing court considers all evidence but whenever reasonable construes it in favor of the party opposed to the motion. Id. at 1501-02 (citing Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969)). The motion should be granted only if the evidence favors one party "so strongly and overwhelmingly" that reasonable persons could not reach a contrary verdict. Id. at 1502. We review the district court's denial of Orenstein's motion for a new trial on a clear abuse of discretion standard. Hessen v. Jaguar Cars, Inc., supra, 915 F.2d at 644-45.
 
 
 15
 Florida contract law allows plaintiffs to collect only those damages either arising naturally from the breach or contemplated by the parties at the time of the contract. T.D.S., Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1531 n. 11, modified on other grounds, 769 F.2d 1485 (11th Cir.1985). The burden of proof is on the plaintiff. Id.
 
 
 16
 Orenstein argues that the damages awarded neither arise naturally from the breach of the stipulation nor were contemplated by the parties at settlement. During the negotiations for the stipulation, Orenstein and the Association discussed making repairs to three of the six midrise buildings and one of the four wings of the highrise. He contends that the parties contemplated inexpensive repairs. Orenstein was to strengthen the walls simply by splicing or replacing studs. The stipulation specified performance within 180 days and provided a one-year warranty for the repairs. Finally, the Association accepted a letter of credit for a maximum of only $200,000 as security for the proposed repairs.
 
 
 17
 Orenstein argues that in contrast to this understood scope of repairs, the Association later authorized the demolition and replacement of the walls of all six of the midrise buildings and all four of the highrise wings. The "repairs" also included the installation of new double pane windows and sliding glass doors. This subsequent work cost four million dollars, was to be performed in two and one half years, and came with a ten-year warranty.[8]
 
 
 18
 The Association counters that Orenstein stipulated to the unambiguous goal of rendering the walls "structurally sound and substantially watertight." The Association argues that unlike this provision of the stipulation, the parties were uncertain about the specific means for achieving this performance standard, such as the cost for the repairs and the time necessary to complete the contract. The Association relates all awarded damages to Orenstein's breach of the clearly contracted objective: the walls subsequently erected, though considerably more expensive than the first set of repairs, were necessary to waterproof the building.
 
 
 19
 We find that the jury award of nearly four million dollars, with half assessed against Orenstein, fully reimburses the Association for construction work that was both unrelated to the breach and more extensive and backed by better guarantees than repairs contemplated in the stipulation. Although the parties contracted to render the walls "structurally sound and substantially watertight," they anticipated that inexpensive repairs to only several buildings would suffice. The subsequent construction might have been required by the developer's failure to construct the buildings properly in the first place, but it was not necessary to remedy the breach of the stipulation. We therefore reverse the district court's decision denying the motion for a new trial on damages and remand for determination of damages in accordance with the guidelines provided.[9]III. CONCLUSION
 
 
 20
 We REVERSE the district court's finding regarding the appropriate statute of limitations and REMAND for reconsideration of the damage award.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 NAMI settled with the Association
 
 
 [2]
 Fla.Stat.Ann. § 95.11(3)(c) (West 1979). The court incorrectly applied the amended § 95.11(3)(c) effective July 3, 1980, instead of the prior version. The statute of limitations begins to run when a cause of action accrues. United States v. Kass, 740 F.2d 1493, 1497 (11th Cir.1984). In contract actions this is generally at the time of the breach of the agreement. Id.; Creviston v. General Motors Corp., 210 So.2d 755, 757 (Fla.Dist.Ct.App.1968), quashed on other grounds, 225 So.2d 331 (Fla.1969). Orenstein breached the contract either in October of 1979, when he appeared to abandon the contract, or in January 1980, when the first hard rainstorm showed continued leaking after the wall repairs were completed. Even if the cause of action accrued after the end of the contract period--in May of 1980--the prior statute is still applicable
 
 
 [3]
 The preamble invokes the term "improvement" eight times and uses no other term to describe the subject of this statute of limitations. 1980 Fla.Laws Ch. 80-322
 
 
 [4]
 The parties agree that high winds ultimately caused the walls to crack, allowing leakage
 
 
 [5]
 Orenstein himself describes the stipulation exclusively as a "contract for repairs." He objects to the cost of the Association's subsequent construction as a measure of damages in part because it includes improvements such as new sliding glass doors and expensive double pane windows. See Brief for Appellant NAMI at 46, incorporated by reference in Brief for Appellant Orenstein
 
 
 [6]
 "(2) Within five years.--
 (b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument." Fla.Stat.Ann. § 95.11(2)(b) (West 1979).
 
 
 [7]
 Since the contract concerns repairs and not an "improvement," we do not impermissibly apply a more general statute of limitations for contracts in place of a more specifically applicable statute of limitations. See Dubin v. Dow Corning Corp., 478 So.2d at 72-73 (breach of warranty claim for leaky roof against builder and roof manufacturer properly barred by the specifically relevant § 95.11(3)(c) rather than the general § 95.11(2)(b))
 
 
 [8]
 Orenstein also complains that some of the damage is attributable to the fact that the Association failed to perform regular maintenance after the repairs were completed. He argues that the district court abused its discretion by failing to exclude testimony that did not specify whether the damage was incurred before the end of the repair period or in the intervening years of neglect. We find that the district court in its instructions sufficiently cautioned the jury on this point
 
 
 [9]
 The insufficiency of the evidence for the damage award falls short of that required for a JNOV. We therefore find that the district court properly denied Orenstein's motion for a JNOV