993 F.2d 793
 62 USLW 2047, RICO Bus.Disp.Guide 8339
 Jimmy W. QUICK and Wanda J. Quick, individually,
Plaintiffs-Counterclaim Defendants-Appellees,
Cross-Appellants,
Jimmy W. Quick and Wanda J. Quick, d/b/a Jimmy Quick Motors,
a partnership, Plaintiffs-Appellees, Cross-Appellants,
v.
PEOPLES BANK OF CULLMAN COUNTY, Defendant-Counterclaim
Plaintiff-Crossclaim Plaintiff-Third Party
Plaintiff-Appellant, Cross-Appellee,
James Arthur Buckelew, Defendant-Crossclaim Defendant-Third
Party Defendant-Appellee, Cross-Appellee.
Jimmy W. Quick, individually; Wanda J. Quick, individually,
Plaintiffs-Counterclaim Defendants-Appellants,
Jimmy W. QUICK, a partnership d/b/a Jimmy Quick Motors;
WANDA J. QUICK, a partnership d/b/a Jimmy Quick
Motors, Plaintiffs-Appellants,
v.
PEOPLES BANK OF CULLMAN COUNTY, Defendant-Counterclaim
Plaintiff-Crossclaim Plaintiff-Third-Party
Plaintiff-Appellee,
James Arthur Buckelew, Defendant-Crossclaim
Defendant-Third-Party Defendant-Appellee.
 Nos. 91-7446, 92-6566.
 United States Court of Appeals,
Eleventh Circuit.
 June 21, 1993.
 
 John S. Key, James G. Adams, Jr., Eyster, Key, Tubb, Weaver & Roth, Decatur, AL, Tom Drake, Drake & Drake, Cullman, AL, for appellants in Case No. 91-7446.
 Richard W. Lewis, Thomas Elliott, Jr., London, Yancey & Elliott, Birmingham, AL, for appellees in No. 91-7446.
 Thomas R. Elliott, Jr., Richard W. Lewis, Birmingham, AL, for appellants in No. 92-6656.
 John S. Key, Decatur, AL, Thomas E. Drake, Cullman, AL, James G. Adams, Jr., Decatur, AL, for appellees in No. 92-6656.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before DUBINA, Circuit Judge, CLARK and ESCHBACH*, Senior Circuit Judges.
 ESCHBACH, Senior Circuit Judge:
 
 
 1
 After a trial in this federal Racketeer Influenced and Corrupt Organizations[1] ("RICO") suit, the jury returned a verdict for $15,000.00 in favor of Jimmy W. and Wanda J. Quick (collectively, the "Quicks") and their partnership, Jimmy Quick Motors ("Quick Motors"). On the basis of the jury's verdict, the district court entered judgment against both the People's Bank of Cullman County (the "Bank") and James Arthur Buckelew ("Buckelew") for $45,000.00. The Bank moved for a judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial. The Bank is now appealing the district court's denial of that motion, arguing that respondeat superior does not apply to RICO actions and that even if it were applicable, Buckelew was not acting within the scope of his employment so as to subject the Bank to liability. Buckelew has not appealed the judgment. The Quicks cross-appeal, challenging the district court's order striking their petition for attorney's fees and costs as untimely under the district's Local Rule ("L.R.") 54.1(a). We have jurisdiction to hear both the appeal and the cross-appeal under 28 U.S.C. § 1291, and we affirm both.
 
 I.
 
 2
 The Quicks own and operate Quick Motors, which purchases vehicles at auction, refurbishes and resells them. Buckelew, a relative of Wanda Quick and a loan officer at the Bank, approached the Quicks with a request to move all of their banking business to the Bank. The Quicks did so, opening a draw-type account with their home as collateral.
 
 
 3
 Some time later, Buckelew made offers to personally finance the purchase of some vehicles for Quick Motors in exchange for a share of the profits upon their sale. After allegedly being reassured by Buckelew that Bank policy permitted it, the Quicks accepted this arrangement. Eventually, Buckelew began to demand a share in the profits on all vehicles sold by Quick Motors, regardless of whether he had any financial stake in them. Buckelew also made personal use of automobiles purchased with the Quicks' dealer license and financed by the Bank, and then demanded that the Quicks take the automobiles back at no cost to him. In addition, Buckelew insisted that deposits and loan payments be made in cash, for which he refused to give receipts. Finally, Buckelew allegedly told the Quicks that he did not want them to keep any records concerning their transactions. Because deposits and loan payments were not being forwarded to the appropriate accounts, the Quicks continued to incur more debt than would have been necessary in the absence of Buckelew's activities. As a result, the Bank earned additional interest as more money was borrowed. During the period in which Buckelew's activities were occurring and prior to any complaints by the Quicks to Bank personnel, Buckelew was promoted from loan officer to assistant vice president of the Bank. When the Quicks later voiced objections to Buckelew, he allegedly told them that the Bank would cover for him. Eventually, the Quicks notified Bank personnel of Buckelew's activities. No action was taken by the Bank until more than a year later, when the Quicks repeated their complaints after being informed that some of their loans had become delinquent. At that time, Candice Nails ("Nails"), vice president of the Bank, requested that the Quicks meet with her and produce records of the transactions involving Buckelew. The Quicks complied. During a meeting with the Quicks, Nails and Robin Cummings ("Cummings"), president of the Bank, told the Quicks to deal with them exclusively, not to say anything about Buckelew's activities, and the Bank would help them. Shortly thereafter, Cummings and Nails inspected the Quicks' inventory and instructed them to sell several items for whatever they would bring to pay down the loan owed to the Bank. The Quicks did so, losing money on the sales. The Bank then presented the Quicks with a consolidation note. The Quicks disputed the amount, but not the fact that they owed the Bank money. Pursuant to the Bank's request, Jimmy Quick signed the consolidation note despite its alleged inaccuracy because the Quicks could not obtain alternative financing since all of their assets were tied up as collateral by the Bank. At the time of trial, the Quicks were current in making payments on the consolidation note.
 
 
 4
 Following the meeting with the Quicks, Cummings confronted Buckelew with the Quicks' accusations and asked him to resign because he had violated the Bank's unwritten conflict-of-interest policy. This policy supposedly prohibited Bank employees from doing business with customers absent permission from the Bank's Board of Directors. Buckelew testified that he was unaware of the conflict-of-interest policy. Other evidence presented at trial indicated that the Bank had not enforced the policy in the past.
 
 
 5
 The Quicks brought suit against Buckelew and the Bank under the federal RICO statute. After a trial, the jury returned a verdict for $15,000.00 in favor of the Quicks. The district court then entered judgment against both the Bank and Buckelew for $45,000.00, trebling the jury's assessment of damages under 18 U.S.C. § 1964(c). The Bank moved for a JNOV or, in the alternative, for a new trial, which the district court denied. On appeal, the Bank is challenging the district court's denial of that motion, arguing that: (1) respondeat superior is not applicable to RICO actions under 18 U.S.C. § 1962(b), and (2) even if respondeat superior were applicable, Buckelew was not acting within the scope of his employment; therefore, the Bank is not subject to liability. Buckelew has not appealed the judgment.
 
 
 6
 After entry of judgment, the Quicks petitioned for attorney's fees and costs as provided for under 18 U.S.C. § 1964(c).[2] The Quicks had requested attorney's fees and costs in their complaint and in the Pre-trial Order, but such an award had not been included in the judgment. The district court ordered the Quicks' petition stricken as untimely under L.R. 54.1(a). On cross-appeal, the Quicks are challenging the district court's order striking their petition. The Quicks admit that their petition was untimely under L.R. 54.1(a).[3] In spite of the untimeliness, the Quicks argue on cross-appeal that: (1) the district court should have exercised its discretion to excuse their noncompliance with L.R. 54.1(a) because the noncompliance did not result in prejudice to the Bank, and (2) the application of L.R. 54.1(a) as a statute of limitations conflicts with the enabling statute, 28 U.S.C. § 2071(a), because it abridges the Quicks' substantive rights to attorney's fees and costs under 18 U.S.C. § 1964(c).
 
 II.
 
 7
 We consider first the Bank's challenge to the district court's denial of its motion for a JNOV or, in the alternative, for a new trial. The "[d]enial of a motion for a JNOV is a question of law subject to de novo review." Pinnacle Port Community Ass'n v. Orenstein, 952 F.2d 375, 378 (11th Cir.1992). In undertaking such a review, "[t]he reviewing court considers all evidence but whenever reasonable construes it in favor of the party opposed to the motion." Id. at 378-79. The denial of a motion for a new trial, on the other hand, is reviewed under a clear abuse of discretion standard. Id. at 379. Mindful of these standards, we address the issues raised by the Bank's appeal.
 
 
 8
 The Bank's first argument on appeal is that employers should not be found vicariously liable for the actions of their employees under the federal RICO statute. Specifically, the Bank is asking this Court to refuse to apply the doctrine of respondeat superior in suits under 18 U.S.C. § 1962(b). The Seventh Circuit, which has developed the most extensive jurisprudence extant on this issue, has recognized that care must be taken not to impose respondeat superior liability on enterprises that are the victims of RICO violations perpetrated by their employees while at the same time imposing liability on enterprises that have benefitted from these activities. Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir.1987), cert. denied, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); accord Landry v. Air Line Pilots Ass'n Int'l, 901 F.2d 404, 425 (5th Cir.) cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Because of this concern, the Seventh Circuit holds that respondeat superior liability may be applied in the context of 18 U.S.C. § 1962(b) only when an enterprise has derived some benefit from the RICO violation. Liquid Air, 834 F.2d at 1307. We agree with this holding.
 
 
 9
 Before considering whether the Bank derived a benefit from Buckelew's actions, a threshold inquiry must be made to determine whether vicarious liability is generally applicable. In Liquid Air, the Seventh Circuit used general agency principles to determine whether the threshold for applying vicarious liability had been met:
 
 
 10
 Under general agency rules, a corporation (principal) will be vicariously responsible for the wrongful acts of its employees (agents) when the acts are: (1) related to and committed within the course of employment; (2) committed in furtherance [of the business] of the corporation; and (3) authorized or subsequently acquiesced in by the corporation.
 
 
 11
 Id. at 1306, citing 10 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4942, at 664 (1986).
 
 
 12
 These three elements bring us to the Bank's second argument on appeal. The Bank argues that even if respondeat superior is applicable, Buckelew was not acting within the scope of his employment, but instead was acting for personal motives contrary to the Bank's interest; therefore, the Bank is not subject to liability. This argument amounts to a challenge to the sufficiency of the evidence supporting the jury's verdict regarding vicarious liability. When reviewing such a challenge, "[t]he question is whether or not reasonable jurors could have concluded as this jury did based upon the evidence presented." Griffin v. Swim-Tech Corp., 722 F.2d 677, 679 n. 1 (11th Cir.1984). We conclude that the jury's findings here meet this standard. The Quicks presented evidence that Buckelew's activities were incident to his assigned duties and took place at the Bank during business hours. This evidence establishes the first element--that Buckelew's activities were related to and committed within the course of his employment.
 
 
 13
 As to the second element, Buckelew had been assigned the function of making loans, and his activities did further that aspect of the Bank's business. To counter this assertion, the Bank argued that Buckelew engaged in these activities in violation of the Bank's conflict-of-interest policy. The Quicks, however, presented convincing evidence that the policy was unwritten, that it had not been enforced in the past and that Buckelew was unaware of it. We thus conclude that there was sufficient evidence to support a finding that Buckelew's activities were committed in furtherance of the Bank's business.
 
 
 14
 Regarding the third element, the Bank did not expressly authorize Buckelew's activities, but there is evidence of acquiescence. Though there is conflicting testimony on the point, the jury was entitled to infer that the Bank acquiesced in Buckelew's activities by requesting that the Quicks: (1) sign a consolidation note that included amounts fraudulently taken by Buckelew, (2) sell their inventory to reduce that indebtedness, (3) not say anything to anyone about Buckelew's activities, and (4) not deal with anyone besides Cummings and Nails. Thus, there was sufficient evidence for a reasonable jury to find that Buckelew's activities were subsequently acquiesced in by the Bank.
 
 
 15
 Having established that vicarious liability is generally applicable, we must now consider whether the Bank derived a benefit from Buckelew's activities in order for respondeat superior under 18 U.S.C. § 1962(b) to apply. Buckelew's intervention prevented many of the Quicks' deposits and loan payments from being forwarded to the appropriate accounts. Therefore, the Quicks incurred more debt than would otherwise have been necessary. The presence of this additional debt benefitted the Bank through the resulting additional earned interest. Though the Bank might have been initially unaware of the accrual of these ill-gotten benefits, it ultimately accepted them when it requested that Jimmy Quick sign a consolidation note including them. The acceptance of these benefits suffice to make the Bank subject to liability under 18 U.S.C. § 1962(b) through the application of respondeat superior.
 
 
 16
 The Bank also attempts to persuade us not to apply respondeat superior because Buckelew did not hold a sufficiently high-level position in the Bank's organizational structure for this form of vicarious liability to attach. Citing a case from the Northern District of Illinois, the Bank argues that "the upper echelons of a corporation must either have been directly involved in or at least have been aware of and acquiesced in racketeering conduct for vicarious liability to be permissible...." R.E. Davis Chemical Corp. v. Nalco Chemical Co., 757 F.Supp. 1499, 1524 (N.D.Ill.1990). When Buckelew began making his demands on the Quicks, he was a loan officer at the Bank. While Buckelew's activities were ongoing, Buckelew was promoted to assistant vice president of the Bank. At that point, the Bank had one president, two vice presidents, and four or five assistant vice presidents. Buckelew was thus one of the top seven or eight officers in an organization that had forty-five to fifty employees. Only two individuals, Cummings and Nails, had direct authority over Buckelew. Therefore, Buckelew held a sufficiently high-level position in the Bank's organizational structure to warrant the application of respondeat superior. In addition, regardless of whether Buckelew should be considered an upper-level employee, the jury was entitled to infer that the Bank's upper management later acquiesced in Buckelew's activities.
 
 
 17
 We conclude that the Bank was subject to liability under respondeat superior. For the foregoing reasons, our de novo review convinces us that the motion for a JNOV was properly denied by the district court. Furthermore, the district court's denial of the alternative motion for a new trial was not an abuse of discretion.
 
 III.
 
 18
 On cross-appeal, the Quicks are challenging the district court's order striking their petition for attorney's fees and costs as untimely under the L.R. 54.1(a). We review a district court's denial of an award of attorney's fees for failure to comply with the local rules under an abuse of discretion standard. Meadows v. Cagle's, Inc., 954 F.2d 686, 694 (11th Cir.1992). The Quicks make two arguments. They first argue that the district court should have exercised its discretion to excuse their noncompliance with L.R. 54.1(a) because the noncompliance did not prejudice the Bank. The Quicks are correct that the district court had discretion to award or deny attorney's fees in this situation. Their argument, however, contains the seeds of its own destruction, because a compulsory exercise of discretion is not discretion at all.
 
 
 19
 In a case involving the computation of time for filing an appeal, this Court stated that counsel's "misreading or unawareness of the time computation principles ... contributed to his failure to file a timely notice of appeal. The unique circumstances doctrine has never been extended to an attorney's miscalculation of the applicable time limits and we see no reason to do so here...." Pinion v. Dow Chemical, U.S.A., 928 F.2d 1522, 1533 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 438, 116 L.Ed.2d 457 (1991), quoting Kraus v. Consolidated Rail Corp., 899 F.2d 1360, 1365-66 (3d Cir.1990). Counsel for the Quicks conceded at oral argument that he had overlooked the time limit in L.R. 54.1(a). As the district court noted, an overly permissive exercise of discretion in excusing unawareness of time limits under the local rules would render them meaningless. Therefore, the district court did not abuse its discretion in striking the Quick's petition for attorney's fees.
 
 
 20
 The Quick's second argument is that the application of L.R. 54.1(a) as a statute of limitations is in conflict with the enabling statute, 28 U.S.C. § 2071(a),[4] because it abridges the Quicks' substantive rights to attorney's fees and costs under 18 U.S.C. § 1964(c). Because this is a question of law, it receives de novo review in this Court. Caro-Galvan v. Curtis Richardson, Inc., 981 F.2d 501, 504 (11th Cir.1993).
 
 
 21
 The Quicks acknowledge that this Circuit has upheld the application of local rules limiting the time for filing petitions for attorney's fees, but they maintain that we have not previously addressed the question now before us. E.g., Meadows, 954 F.2d at 694 (upholding L.R. 54.1); Zaklama v. Mount Sinai Medical Center, 906 F.2d 645, 649-50 (11th Cir.1990) (upholding a similar local rule in Florida). The Quicks point out that the statute in question here, 18 U.S.C. § 1964(c), makes the award of attorney's fees mandatory, whereas the previous cases have involved statutes in which the award of attorney's fees is permissive. Meadows, 954 F.2d at 694 (29 U.S.C. § 1132(g)); Zaklama, 906 F.2d at 647 (42 U.S.C. § 1988(b)). We believe that this distinction does not alter the analysis. The application of L.R. 54.1(a) in no way affects a party's right to an award of attorney's fees, it only requires that the right be exercised in a timely manner. Once a timely petition is made, a party seeking fees under a mandatory statute shall receive them, while a party seeking fees under a permissive statute may receive them.
 
 
 22
 Congress did not provide a statute of limitations for seeking an award of attorney's fees and costs under 18 U.S.C. § 1964(c). We do not believe that Congress intended for courts to be forced to accept petitions for attorney's fees indefinitely, but rather that some reasonable time limitation be imposed. "It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, ----, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991). The most analogous time limitation in this case is L.R. 54.1(a). Because the time limitation is reasonable and does not substantively affect the Quick's rights under 18 U.S.C. § 1964(c), L.R. 54.1(a) does not create a conflict with the enabling statute. Therefore, we uphold the district court's order striking the Quick's petition for attorney's fees and costs.
 
 IV.
 
 23
 Accordingly, we AFFIRM the district court's denial of the motion for a JNOV or, in the alternative, for a new trial. We also AFFIRM the district court's order striking the Quicks' petition for attorney's fees and costs as untimely under L.R. 54.1(a).
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 18 U.S.C. § 1961 et seq
 
 
 [2]
 18 U.S.C. § 1964(c) provides: "Any person injured in his business of property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."
 
 
 [3]
 L.R. 54.1(a) reads as follows:
 (a) Attorneys' Fees. If a final judgment ... does not determine ... the amount of attorneys' fees which are authorized by statute to be awarded by the court to or on behalf of a prevailing party ... the following procedures shall apply:
 (1) The award of such fees (and expenses thereto not ordinarily allowable as taxable costs) shall be requested by special written motion addressed to the court....
 (2) The motion shall be filed with the Clerk of the court and served under Fed.R.Civ.P. 5 upon the parties against whom the award is sought within 20 days after entry of the judgment ... unless prior to the expiration of that period the court enters an order allowing an additional time within which such motions may be filed.
 The district court mentioned in its order two possible interpretations of L.R. 54.1(a). The first is that the twenty-day period should begin to run from the entry of judgment and the second is that the twenty-day period should not begin to run until the denial of any timely post-trial motions (as the predecessor local rule provided). We need not adopt either interpretation, as the Quicks concede that their petition was untimely under both.
 
 
 [4]
 28 U.S.C. § 2071(a) provides authority for federal courts to proscribe local rules for the conduct of their business and states that "[s]uch rules shall be consistent with Acts of Congress...."