Kimberly CHASE, Plaintiff,

v.

ORKIN EXTERMINATING COMPANY, INC., a Delaware corporation, Michael Ogilvie, individually, Ray Pinckard, individually, Kenneth Raynor, individually, and Christopher Wells, individually, Defendants.

No. 96–1001–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

July 22, 1998.

Alfred L. Frith, Bogin, Munns & Munns, Orlando, FL, Arthur Greenhill Emens, III, Law Office of Alfred L. Frith, P.A., Key West, FL, for Kimberly Chase, plaintiffs.

Peter W. Zinober, Danielle R. May, Zinober & McCrea, P.A., Tampa, FL, Thomas C. Garwood, Jr., Daniel P. O'Gorman, Garwood, McKenna, McKenna & Wolf, P.A., Orlando, FL, for Orkin Exterminating Company, Inc., a Delaware corporation, Michael Oglvie, individually, Raymond Pinckard, individually, Kenneth Raynor, individually, Christopher Wells, individually, defendants.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff Kimberly Chase (Chase) commenced the instant action against defendant Orkin Exterminating Company, Inc. (Orkin) and four of its employees seeking redress for alleged violations of federal and state law. She specifically claimed that Orkin violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, as amended

(Title VII) and discriminated against her because of her sex by embracing a sexually charged and hostile work environment and by allowing the same to exist without acting to curb it. Relying upon the same allegations, Chase stated a parallel discrimination claim against Orkin pursuant to the Florida Civil Rights Act of 1992, codified at chapter 760 of the Florida Statutes (FCRA). She further claimed that Orkin employees, Michael Ogilvie, Ray Pinckard, Kenneth Raynor, and Christopher Wells, either perpetrated or contributed to the alleged harassment by battering her or subjecting her to intentional infliction of emotional distress, for which she sought relief against the individual defendants as well as Orkin. The case was tried before a jury on June 18, 19, 22, 23, and 24, 1998. On June 25, 1998, the jury returned its verdict. The jury found in favor of Chase and against Orkin on her claims predicated upon Title VII and the FCRA, and awarded Chase $150,000.00. The case is presently before the court on Orkin's renewed motion for judgment as a matter of law, filed pursuant to and authorized by Rule 50(b) of the Federal Rules of Civil Procedure.

### I. Procedural History and Factual Background

Chase began working for Orkin in March of 1993 at its office in Lake Mary, Florida. She claims that, through June 1993, she suffered unwanted sexual advances and overtures at the hands of Ogilvie, who allegedly trained and supervised her. Chase claims that she told Ogilvie that his continuing advances were making her increasingly uncomfortable.

To insulate herself, Chase petitioned for and received a transfer to Orkin's Orlando office in June 1993. However, once in Orlando, she claimed that harassment continued as evidenced by the fact that someone let the air out of her automobile tires, took her keys, and took her flashlight. She also complains that, after the transfer to Orlando, Wells and Raynor commented about her style of underwear during sales meetings. These instances of alleged harassment led Chase to state that she felt "picked on." [1]

---

1. These incidents are irrelevant to Chase's sexual harassment claims and are offered merely for

context inasmuch as the court limited the rele-

On November 6, 1995, Chase claimed that she was standing in the Orkin parking lot speaking with Raynor through his open automobile window. She then alleged that Wells, seeing Chase and Raynor talking, parked his car such that Chase would have difficulty moving, after which Raynor and Wells groped her and attempted to remove her clothing.[2] Chase claimed that she managed to free herself from the two and returned to the Orkin building. Chase never reported this incident to any Orkin supervisor.

Shortly thereafter, Chase claimed that Ogilvie physically blocked her path when she attempted to get a drink of water. When he finally relented, he allegedly shoved her in the back as she proceeded to the water fountain. Chase wrote a letter of complaint to Pinckard outlining in detail Ogilvie's behavior. Trial testimony confirmed that a full investigation of this incident was conducted, Ogilvie was reprimanded, and Chase was granted a transfer, after which she never again complained of sexual harassment or a hostile work environment. This corporate reaction to Chase's complaint was consistent with its policy that sexual harassment would not be tolerated; a policy it conveyed clearly by way of signs displayed in employee areas of their facilities.

Despite such evidence, Chase claimed that Orkin did not act to curb the harassment and hostile environment that allegedly occurred and existed in the workplace. Instead, she contended that she was forced to work in an intimidating, hostile, and sexually offensive work environment as a condition of her continued employment. She stated that Orkin's action in response to complaints of harassment "shows ratification at the highest level of an attitude that is not only sexually offensive towards women, but is also demeaning and belittling." (Complaint at ¶ 16.)

In all, Chase testified about six incidents of nonphysical conduct upon which she grounded her discrimination claims. First, someone telephoned her pager and entered a numeric message that, when read upside down, spelled-out the word "boobless." Second, at some point Raynor grabbed his crotch and

said to Chase "this is how it looks." Third, Raynor asked Chase for a date on one occasion. Fourth, Wells referred to Chase as a slut on occasion. Fifth, Pinckard allegedly told Chase that she was too attractive and petite to enter the service management program. Sixth, and finally, Chase testified regarding the habit of Raynor, Wells, and others of commenting on her style of underwear or lack thereof.

Following Chase's case in chief, the court entertained defendants' motions for judgment as a matter of law. The court reserved its ruling on defendants' motions and allowed defendants to present their evidence. Following the close of all evidence, defendants renewed their motions for judgment as a matter of law. The court again reserved its ruling on the motions, allowing the claims to be submitted for the jury's consideration. The jury returned a verdict in favor of Chase and against Orkin on her discrimination claims, awarding Chase $150,000.00. On Chase's claims for battery against the individual defendants, the jury returned a verdict in favor of defendants Ogilvie, Raynor, and Wells, and against Chase, finding either that the defendants had not battered Chase or that any battery which may have occurred was insubstantial to the point that it was not offensive per the relevant standard. As to Chase's claims for intentional infliction of emotional distress, the jury returned a verdict in favor of Chase and against defendants Raynor and Wells, ordering each to pay Chase damages in the amount of $13,250.00 and $5,750.00, respectively.

## II. Legal Discussion

Through this post-trial renewed motion for judgment as a matter of law, Orkin challenges the jury's finding as to its liability on Chase's discrimination claims. Orkin claims that a reasonable jury could not have concluded that Orkin violated Title VII or the FCRA based upon the evidence that was properly available for their review and use in rendering a verdict. After setting forth the applicable standard of review, the court will address the merits of the evidence presented

---

vant time period in the instant case to January 1, 1995 through November 16, 1995.

**2.** Throughout the course of these proceedings, this has come to be known as the alleged "rape" or the "parking lot incident."

at trial in light of the relevant substantive standard for discrimination claims.

### A. Legal Standard on Motions for Judgment as a Matter of Law

When evaluating a motion for judgment as a matter of law filed pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, the court must determine " 'whether or not reasonable jurors could have concluded as [the jury in the case at bar] did based [up]on the evidence presented.' " *Morro v. City of Birmingham*, 117 F.3d 508, 513 (11th Cir.1997), *cert denied*, —— U.S. ——, 118 S.Ct. 1299, 140 L.Ed.2d 465 (1998) (quoting *Quick v. Peoples Bank of Cullman County*, 993 F.2d 793, 797 (11th Cir.1993)). In doing so, the court must draw all reasonable inferences in favor of the nonmoving party. *Quick*, 993 F.2d at 797.

### B. The Merits of Orkin's Motion

To prove that she was subjected to a sexually hostile work environment, Chase must demonstrate, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon sex; (4) the harassment was sufficiently severe, both subjectively and objectively, to alter the terms or conditions of her employment; and (5) that Orkin knew or should have known of the harassment and failed to take prompt remedial action. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Savs. Bank FSB v. Vinson*, 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir.1982). It is on the fifth element that the evidence Chase submitted failed to support her claims.

When properly circumscribed temporally, the evidence Chase presented at trial revealed only two incidents of alleged harassment about which Orkin supervisors were aware.[3] First, Chase alleged that Raynor once commented on her style of "jeans" and how tightly she chose to wear them at work. The credible trial testimony confirmed that Pinckard was made aware of the incident, investigated it, and discovered that Raynor

had actually made an otherwise inappropriate comment regarding another employee's family "genes." The fact that this incident was a misunderstanding is corroborated by unrefuted evidence that Chase never wore, and would not have been allowed by Orkin to wear, denim jeans to work. Inasmuch as Pinckard became aware of the incident about which Chase complained, investigated it, and resolved it without dispute as a misunderstanding, the incident cannot give rise to Orkin's liability because it acted as it should have and in accordance with the *Harris* standard. No reasonable jury could have cast Orkin's response to the incident as inactivity in the face of a complaint from an employee.

The second incident Chase reported to a supervisor came when Ogilvie shoved Chase in the back as she was leaving a meeting room. The credible evidence demonstrated that Chase formally complained to Pinckard about the incident, who then conducted an investigation, reprimanded Ogilvie, and granted Chase a transfer to another Orkin location, after which she never again complained of sexual harassment or a hostile work environment. Moreover, the jury found Ogilvie liable for nothing. Thus, if the allegedly perpetrating employee was not found liable, then Orkin cannot be liable for the same incident. Accordingly, on the facts of the instant case, a reasonable jury could not have visited upon Orkin liability predicated upon Title VII or the FCRA for sexual harassment.

Interestingly, the most serious incident of harassment alleged by Chase, the alleged rape attempt in the Orkin parking lot, went unreported to Orkin supervisors despite the fact that it allegedly occurred before the relatively minor incident wherein Ogilvie shoved her in the back, which she felt compelled to report. The fact that such a serious allegation went unreported corroborates the jury's determination that it did not occur. The jury found that neither Ogilvie, Raynor, nor Wells touched Chase in an unwelcome or offensive manner or otherwise in a manner which would support a claim for battery. Necessarily then, if the jury determined that the individual defendants did not batter

---

**3.** *See supra,* note 1.

Chase, the jury could not have believed Chase's claim of attempted rape in reference to the alleged parking lot incident.

In evaluating Orkin's reaction, through its supervisors, to the incidents about which it became aware, the court concludes that Orkin acted just as it was required to under the applicable law. It investigated the incidents, reprimanded the perpetrators, and otherwise accommodated Chase. The law requires only that employers take "prompt remedial action," which is what Orkin did in the case at bar. *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367. The law does not penalize an employer for remedial action which, with the perspective that only hindsight can provide, proves ineffective. In the instant case, Orkin acted exactly as it should have given what it knew through its supervisors, which is all the law requires. *Id.* As such, the court will grant Orkin judgment as a matter of law on Chase's discrimination claims predicated upon Title VII and the FCRA. *See Florida St. Univ. v. Sondel,* 685 So.2d 923, 925 n. 1 (Fla.Dist.Ct.App.1996) (citing *Florida Dep't of Community Affairs v. Bryant,* 586 So.2d 1205, 1209 (Fla.Dist.Ct.App.1991) (federal case law construing Title VII is equally applicable to claims predicated upon FCRA)).

*C. Orkin's Motion for New Trial*

In compliance with Rule 50(b) of the Federal Rules of Civil Procedure, the court concludes that Orkin's motion for new trial is moot.

### III. Conclusion

In accordance with the foregoing, the court concludes that no reasonable jury could have found Orkin liable on Chase's claim for sexual harassment on the facts properly before it for deliberation. The evidence adduced at trial demonstrated that any harassment endured was insufficiently severe or pervasive to constitute actionable harassment under Title VII of the Civil Rights Act of 1964, or the Florida Civil Rights Act of 1992. Further, no reasonable jury could have concluded that Chase found the working environment at Orkin subjectively hostile in a way to support such liability on the part of Orkin. Accordingly, Orkin is entitled to judgment as a matter of law on Chase's claims for sexual harassment. The clerk of court is, therefore, directed to VACATE the jury award in favor of Chase on Counts I and II of her complaint and enter judgment in favor of Orkin on those counts. To the extent stated herein, Orkin's renewed motion for judgment as a matter of law (Doc. 134) is **GRANTED**, and Orkin's motion for new trial (Doc. 135) is conditionally **DENIED** as moot, in accordance with Rule 50(b) of the Federal Rules of Civil Procedure.