**In re PHILADELPHIA MORTGAGE TRUST,**

**Maurice BAEHR,**
**Sr., Trustee,**

v.

**TOUCHE ROSS & CO., Appellant.**

No. 90–1395.

United States Court of Appeals,
Third Circuit.

Argued Nov. 9, 1990.

Decided April 11, 1991.

Gene E.K. Pratter (argued), Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

David S. Fishbone (argued), Kathy McAlice, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for appellee.

Before SLOVITER, Chief Judge,* and SCIRICA and SEITZ, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Chief Judge.

I.

*Introduction*

The sole issue in this case is whether a bankruptcy court's orders that approve a trustee's employment of expert witnesses are tantamount to appointment by the court of those witnesses for purposes of 28 U.S.C. § 1920(6) (1988), which permits taxation as costs against the losing party of fees for "court appointed experts." Surprisingly, this appears to be a question of first impression for an appellate court.

* The Honorable Dolores K. Sloviter became Chief Judge of the Third Circuit on February 1, 1991.

## II.

### Factual and Procedural History

Maurice Baehr, Sr. ("Baehr" or "trustee"), the trustee in bankruptcy for Philadelphia Mortgage Trust ("PMT"), commenced an adversary proceeding against Touche Ross & Co. ("Touche") in the United States Bankruptcy Court for the Eastern District of Pennsylvania on September 13, 1985, for breach of Touche's contract to audit PMT. At the time this action was commenced, PMT had been in reorganization proceedings under Chapter 11 of the Bankruptcy Code for over two years.

On three separate occasions, Baehr applied for and received authorization from the Bankruptcy Court to employ three accountants. The first of these applications, filed over a year before the trustee commenced suit against Touche, requested an accountant's assistance to render typical accounting services. The latter two, both entitled "Application to Employ Expert Witness", App. at 30, 37, sought authorization to employ two other accountants to "prepare a report for use at trial, appear at trial and assist counsel in this litigation." App. at 31, 38. Neither the applications nor the court's orders approving them mention any specific rules or statutory authority for the employment of the accountants.

The parties stipulated to withdrawal of reference to the bankruptcy court of the adversary proceeding, and the case was tried before the district court. The jury entered a verdict against Touche in the amount of $207,910.

Baehr then submitted a bill of costs for $109,084.68, of which expert witness fees for the employment of the three accountants comprised $101,071.50. Touche objected to the inclusion of the expert witness fees as beyond the statutory bounds of 28 U.S.C. § 1821(b) (1988). The clerk denied recovery for those fees and taxed costs of only $8,013.18. Baehr moved for reconsideration. The district court then entered an order which stated, *inter alia*, "Plaintiff

1. Rule 54(d) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be

Trustee's expert witnesses *shall be deemed court appointed experts entitled to compensation pursuant to 28 U.S.C. § 1920,"* App. at 54 (emphasis in original), and granted Baehr's motion to tax costs against Touche for the full amount of the expert witnesses' fees.

Touche now appeals the district court's order. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1988).

## III.

### Discussion

The distinction between court approval and court appointment is a legal one, and therefore we survey the applicable law under a plenary standard of review. Our analysis of whether approval is synonymous with appointment must begin with the interrelationship between 28 U.S.C. § 1920, the statute on taxation of costs, and Rule 54(d) of the Federal Rules of Civil Procedure, the rule governing taxation of costs.[1] In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court held that although district courts have the discretion under Rule 54(d) to decline to tax certain costs enumerated in 28 U.S.C. § 1920 against the losing party, they may include as costs only those items specifically enumerated in that statute.

Thus, in the absence of any other explicit statutory authority for taxing expert witness fees as costs, the costs which the court may tax pursuant to its Rule 54 power are governed by 28 U.S.C. § 1920, which provides, in relevant part:

A judge or clerk of any court of the United States may tax as costs the following:

.        .        .        .        .

(3) Fees and disbursements for printing and *witnesses;*

.        .        .        .        .

(6) Compensation of *court appointed experts.*

allowed as of course to the prevailing party unless the court otherwise directs...."

(Emphasis added).

■ The amount of the fees for witnesses within the meaning of subsection (3) is in turn governed by 28 U.S.C. § 1821(b),[2] which limits payment to an attendance fee of $30 per day. As the Court explained in *Crawford,* this payment is to be distinguished from compensation for court-appointed expert witnesses because the $30 per day cap is not applicable to subsection (6). The Court stated:

> [Section] 1920(6) allows the taxation, as a cost, of the compensation of court-appointed expert witnesses. There is no provision that sets a limit on the compensation for court-appointed expert witnesses in the way that § 1821(b) sets a limit for litigants' witnesses.... We think that the inescapable effect of these sections in combination is that a federal court may tax expert witness fees in excess of the $30–per–day limit set out in § 1821(b) only when the witness is court-appointed.

*Crawford,* 482 U.S. at 442, 107 S.Ct. at 2497–98. It is therefore essential for cost purposes to establish whether the accountants were the plaintiff's witnesses and subject to the $30 limit or whether they were court-appointed expert witnesses to whom the limit is inapplicable.

**2.** Section 1821(b) provides: "A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

**3.** F.R.E. 706 provides in relevant part:
(a) Appointment. The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection....
(b) Compensation. Expert witnesses so appointed are entitled to reasonable compensation in whatever sum the court may allow....
[T]he compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs.

■ The appointment and compensation of court-appointed expert witnesses are governed by Federal Rule of Evidence 706.[3] As explained by one of the leading commentators, "[t]he procedure *mandated* by Rule 706(a) calls for either the court ... or any party to move [for] an order to show cause why expert witnesses should not be appointed." 11 Moore's Federal Practice § 706.10 (emphasis added). Thereafter, the court may appoint an expert agreed upon by the parties or choose one of its own selection. It follows that the court may not select an expert witness proposed by one party without giving the other party an opportunity to respond. *See id.* (The procedure of Rule 706 ensures that "the appointment will not come as a surprise to any party.").

Baehr does not dispute that the bankruptcy court failed to use the mechanism of Rule 706 to appoint the accountants. He argues, however, that the procedure set forth in Rule 706 is not the exclusive procedure for court appointment of expert witnesses. He asserts that the provisions under which the bankruptcy court may authorize the employment of accountants or other professional persons upon proper application of the trustee, *see* 11 U.S.C. §§ 327 and 330 (1988),[4] as well as Rule 2014 of the

**4.** 11 U.S.C. § 327 provides:
Employment of professional persons
(a) ... [T]he trustee, with the court's approval, may employ one or more ... professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
11 U.S.C. § 330 provides:
Compensation of officers
(a) ... [T]he court may award to ... a professional person employed under section 327....
(1) reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

Bankruptcy Code,[5] are analogous to the Rule 706 procedure. Under Baehr's reasoning, once the court approved the employment of a professional under section 327 and Rule 2014, the court may then compensate that professional from the bankruptcy estate for fees for actual, necessary services pursuant to section 330, and then tax that amount as costs against a losing party.

We reject Baehr's attempt to draw a parallel between appointment of expert witnesses under Rule 706 and approval of employment of professional persons under 11 U.S.C. §§ 327 and 330. Court appointment of witnesses under Rule 706 and approval of professionals under section 327 are governed by different procedures and serve different purposes. There is no provision under section 327 analogous to the procedural safeguards in Rule 706. In fact, Touche contends that it had no notice of the trustee's requests for approval of employment of the accountants.

Another difference lies in the information which must be provided to the court under each process. Before the court may approve a professional under section 327, the court must be provided with the information specified under Bankruptcy Rule 2014(a). There is no corresponding litany of detail to be provided to a court when it appoints an expert witness under Rule 706(a). For example, although a professional appointed under section 327 must be "disinterested," this disinterest goes to the absence of an interest adverse to the estate so that the professional's employment would not result in a violation of the trust necessary for such a position. Unlike the neutrality expected of an expert appointed under Rule 706(a), the professional employed by the trustee is expected to have the interest of his or her employer at heart.

Moreover, the manner of compensation under Rule 706(b) for court-appointed experts and 11 U.S.C. § 330 for professionals appointed to assist a trustee is different. Rule 706(b) affords the court discretion to order that payment of the expert witness fee be shared by some or all of the parties. Section 330 merely empowers the court to compensate the approved professional from the funds of the bankrupt debtor.

These procedural differences bespeak a crucial underlying distinction: a court-appointed expert witness is neutral with regard to all parties, whereas a professional approved under the bankruptcy statute serves the interests of the trustee. In this case, the trustee's applications make it clear that the purpose for hiring the accountants in question was to assist the trustee with his case against Touche. They were not appointed to serve the court and all the parties.

Court approval under 11 U.S.C. § 327 and Rule 2014 of the selection of professionals by the trustee is not designed to serve the same purpose as court appointment of experts. As we noted in *Matter of Arkansas Co.*, 798 F.2d 645, 649 (3d Cir. 1986), Congress chose to require prior court approval for the trustee's employment of an attorney, accountant, or other professional in order to eliminate abuses and detrimental practices such as cronyism of the "bankruptcy ring" and attorney control of bankruptcy cases. Furthermore, prior court approval serves to preserve the bankrupt estate by preventing unnecessary professional excursions.

We see many reasons not to equate "approval" with "appointment."[6] First, such

---

5. Rule 2014 provides:
   Employment of Professional Persons
   (a) Application for an order of employment
   An order approving the employment of ... professionals pursuant to § 327 ... shall be made only on application of the trustee ... stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge,

all of the person's connections with the debtor, creditors, or any other party in interest....

6. We have found a handful of bankruptcy cases that seem to use "court approval" under § 327 synonymously with "court appointment." *See, e.g., In re Northeast Dairy Co-op. Federation, Inc.*, 74 B.R. 149, 152 (Bankr.N.D.N.Y.1987); In the *Matter of Ross*, 88 B.R. 471, 475 (Bankr.M.D. Ga.1988); *In re Amherst Mister Anthony's Ltd.*, 63 B.R. 292, 293 (Bankr.W.D.N.Y.1986). None

an approach would stray from the plain language of the statutes and rules. Second, Baehr offers no legislative history to support his claim that Congress did not mean precisely what it said when it used each term. Indeed, Congress differentiated between approval and appointment when it enacted the 1978 amendments to the Bankruptcy Code because it applied each for different purposes. *Compare* 11 U.S.C. § 701(a) (1988) (referring to appointment of interim trustees) *with* 11 U.S.C. § 327 (referring to court approval of professionals).

Third, there is ample evidence that Congress will explicitly provide for taxation of expert fees as costs when it so intends. *See International Woodworkers of America v. Champion Int'l Corp.*, 790 F.2d 1174, 1179 n. 7 (5th Cir.1986) (*en banc*) ("At least twenty-eight statutes [specifically] provide for the taxing of expert witness' fees as costs in civil actions."), *aff'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *see also West Virginia Hosps., Inc. v. Casey*, —— U.S. ——, —— – ——, 111 S.Ct. 1138, 1140–44, 113 L.Ed.2d 68 (1991). Had Congress intended that the selection of professionals by a bankruptcy trustee should entitle the bankrupt estate to recover their fees in an adversary proceeding, presumably it would have included specific language to that effect in the Bankruptcy Code.

In sum, the trustee's attempts to have us equate approval with appointment cannot prevail against the backdrop of the *Crawford* decision and its prohibition of taxation as costs of anything not explicitly mentioned in 28 U.S.C. § 1920. In our view, there is a fundamental difference between approving the employment of professionals whose fees for assistance to the trustee will be paid out of the bankrupt estate and appointing neutral expert witnesses in an adversary proceeding where fees may be taxed as costs against the losing party.

IV.

*Conclusion*

For the foregoing reasons, we will reverse the district court's order.

of these cases involves the specific issue of whether expert witness fees may be assessed against a losing party in an adversary proceeding; rather they involve compensation of court "appointed" professionals from the bankruptcy estate under 11 U.S.C. § 330. The use of the term "appointment" in these cases was imprecise and they hardly constitute persuasive precedent in the cost-assessment context.