Andrew E. **JOHNSON**, et al., Plaintiffs,

v.

Sandra **MORTHAM**, etc., et al., Defendants.

No. TCA 94–40025–MMP.

United States District Court, N.D. Florida, Tallahassee Division.

Oct. 29, 1996.

---

Before HATCHETT, Chief Circuit Judge, PAUL, Chief District Judge, and VINSON, District Judge.

## ORDER

BY THE COURT:

Pending are the Plaintiffs' motions and amended motion for attorney fees and costs against Defendants Florida Secretary of State Sandra Mortham, the Florida Senate, and the Florida House of Representatives (collectively, the "State Defendants") (docs. 201, 213, 216 & 250), and the Plaintiffs' motion to tax expert witness fees against the United States (doc. 205).

### I. Background

Plaintiffs are white and hispanic voters who raised an equal protection challenge to Florida's Third Congressional District under the authority of *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511(1993). The District was part of Florida's statewide congressional districting established in 1992 by a three-judge federal court—the *"DeGrandy* Court."[1] Plaintiffs claimed that District Three was unconstitutional because it segregated voters on the basis of race, and was not narrowly tailored to further a compelling governmental interest.

On November 20, 1995, we granted plaintiffs' motion for partial summary judgment on the basis that District Three was drawn for predominately race-based reasons, thereby triggering strict scrutiny. *Johnson v. Mortham,* 915 F.Supp. 1529, 1552–53, (N.D.Fla.1995) (three-judge panel).

Thereafter, a three-day bench trial was held to determine the remaining issue of whether District Three could withstand strict scrutiny review. On April 17, 1996, a majority of this court held that Florida's Third Congressional District did not pass strict scrutiny because it was a racially gerrymandered district not narrowly tailored to further a compelling governmental interest. *Johnson v. Mortham,* 926 F.Supp. 1460, 1495 (N.D.Fla.1996) (three-judge panel). We also invited the Florida Legislature to adopt a new congressional redistricting plan which would remedy the constitutional infirmities of Congressional District Three. *Id.* The Legislature did timely adopt a new plan ("Plan 412"), which the Governor signed into law. After a hearing and receiving comments from all parties involved, this Court approved the new plan and directed that Plan 412 should serve as the plan for the 1996 elections and thereafter until the Florida Legislature adopts another plan or until further order of this Court. *Johnson v. Mortham,* 1996 WL 297280 (N.D.Fla. May 31, 1996). Subsequently, the Supreme Court of the United States decided *Shaw v. Hunt,* —— U.S. ——, 116 S.Ct. 1894, 135 L.Ed.2d 207 (1996), and *Bush v. Vera,* —— U.S. ——, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996). In those cases, the Supreme Court reached conclusions which essentially confirmed our decision that District Three could not survive strict scrutiny. Thereafter, all Defendants promptly dismissed their appeals.

### II. Analysis

#### A. *Liability of the State Defendants*

■ The Plaintiffs now seek an award of attorney fees and costs against the State Defendants. According to the Plaintiffs, they have successfully asserted constitutional claims against the State Defendants under Title 42, United States Code, Sections 1983 and 1973l, and are thus "prevailing parties" entitled to attorney fees under the terms of Title 42, United States Code, Section 1988.[2] The State Defendants, on the other hand, deny any liability for attorney's fees in this case. First, the State Defendants contend that the Plaintiffs are not prevailing parties because they continue to object to Congressional District Three as redrawn by the Florida Legislature. Second, the State Defendants maintain that they had nothing to do with the creation of the challenged congressional district, and that they did not act in any way so as to deprive the Plaintiffs of any right, privilege, or immunity guaranteed by

---

1. *DeGrandy v. Wetherell,* 794 F.Supp. 1076 (N.D.Fla.1992). The *DeGrandy* court included two of the judges of this three-judge court: Judge Hatchett and Judge Vinson.

2. Section 1973l, which provides for attorney's fees in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment," uses similar language to section 1988, and the two statutes should be construed similarly. *Riddell v. National Democratic Party,* 624 F.2d 539, 543 (5th Cir.1980).

the Constitution. Therefore, the State Defendants argue that this case presents special circumstances which would make unjust any award of attorney fees against them. Finally, the State Defendants assert that the failure of Plaintiffs' counsel to file monthly attorney time reports as required by Local Rule 54.1 bars the Plaintiffs' request for attorney's fees.

### Attorney's Fee Awards Under Section 1988.

Section 1988(b) provides that "the court, in its discretion, may allow the prevailing party" in a suit to enforce rights under section 1983 "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Congress enacted section 1988 to give victims of civil rights violations effective access to the judicial process, and to encourage private attorneys general to enforce fundamental constitutional rights under section 1983. *Dowdell v. City of Apopka,* 698 F.2d 1181, 1189 (11th Cir.1983).

(a) **The "prevailing party" standard.** The State Defendants contend that since the Plaintiffs continue to object to the new district as drawn by the Legislature, they cannot be deemed prevailing parties. A civil rights plaintiff prevails under section 1988 when he or she succeeds on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Ruffin v. Great Dane Trailers,* 969 F.2d 989, 992 (11th Cir.1992) (alteration in original), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1257, 122 L.Ed.2d 655 (1993), (*quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989)). "Thus, at a minimum, to be considered a prevailing party within the meaning of [section] 1988, the plaintiff[s] must be able to point to a resolution of the dispute which changes the legal relationship between [themselves] and the defendant[s]." *Garland Indep. Sch. Dist., supra,* 489 U.S. at 792, 109 S.Ct. at 1493, 103 L.Ed.2d at 877; *see also Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992). Therefore, the touchstone of the prevailing party inquiry focuses on whether the plaintiffs' lawsuit caused a material alteration of the legal relationship of the parties. *Farrar v. Hobby, supra,* 506 U.S. at 111, 113 S.Ct. at 573, 121 L.Ed.2d at 503; *Garland Indep. Sch. Dist., supra,* 489 U.S. at 792–93, 109 S.Ct. at 1493, 103 L.Ed.2d at 878.

It cannot be seriously questioned that the Plaintiffs in this case are "prevailing parties" for purposes of section 1988. Plaintiffs brought suit under section 1983, alleging that Congressional District Three was a racial gerrymander which could not withstand constitutional scrutiny in light of the United States Supreme Court's post-1992 decisions. Following a three-day trial, a majority of this Court agreed, and invalidated the district. The Florida Legislature then reconfigured District Three in order to comply with this Court's mandate and the standards set by the Supreme Court. The Florida Secretary of State will now implement the newly created District for use in this year's Congressional elections. Therefore, as a result of the Plaintiffs' action, District Three has been materially altered and the Plaintiffs have succeeded in their Constitutional challenge to its configuration.

Moreover, it would be inappropriate to deny the Plaintiffs "prevailing party" status merely because they later objected to the Legislature's redrawn district. *See Church of Scientology Flag Service, Org., Inc. v. City of Clearwater,* 2 F.3d 1509, 1514 (11th Cir. 1993), *cert. denied,* 513 U.S. 807, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994). The Plaintiffs' actions in response to the Legislative plan have little to do with the question of whether the Plaintiffs prevailed in this litigation. *See id.* The Plaintiffs have fully succeeded in their suit to strike down the former District Three. That the Plaintiffs may later seek to challenge the new modified District Three is irrelevant: "When there is a material change in the legal relationship between the parties which benefitted [the plaintiff], the fact that [the plaintiff] continues to challenge that relationship as modified does not mean that it did not 'prevail' as a threshold matter." *Id.*

(b) **The "special circumstances" exception.** The State Defendants also argue that they have acted in good faith, so that

"special circumstances" exist which make it unjust to make them pay the Plaintiffs' attorney fees. Although section 1988 does not require the court to award an attorney's fee to the prevailing party in every case, the court's discretion is extremely limited: "the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 942 n. 1, 103 L.Ed.2d 67, 72 n. 1 (1989) (*quoting Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1266 (1968); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 47–48 (1983)); *see also Robinson v. Kimbrough*, 652 F.2d 458, 464 (5th Cir.1981). Moreover, because the special circumstances exception is a judicially imposed provision not found within the text of section 1988, the exception "should be narrowly construed so as not to interfere with the congressional purpose in passing [section 1988]." *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir.1985) (en banc); *see also Hatfield v. Hayes*, 877 F.2d 717, 720 (8th Cir.1989).

The burden of demonstrating special circumstances falls squarely on the Defendants, who must make a "strong showing" to justify denial of attorney's fees and costs to prevailing plaintiffs. *Martin v. Heckler, supra*, 773 F.2d at 1150; *Riddell v. National Democratic Party, supra*, 624 F.2d at 543. "Defendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion." *Martin v. Heckler, supra*, 773 F.2d at 1150. Further, "[i]t is also not a special circumstance sufficient to preclude a fee award against the state defendant that the state merely acted pursuant to federal regulation." *Id.; see also Rose v. Heintz*, 806 F.2d 389, 392 (2d Cir.1986).

The State Defendants contend that because the *DeGrandy* Court, and not the State, created Congressional District Three, they did not deny the plaintiffs any right, privilege or immunity guaranteed by the constitution, and are thus not liable under section 1983 and 1988 for attorney's fees. Although this position is not entirely unreasonable, it is eclipsed by the simple fact that the *DeGrandy* Court was forced to step in and create a congressional redistricting plan only after the Florida Legislature failed to fulfill its legislative responsibilities regarding reapportionment. As this Court has already recognized, a court-drawn redistricting plan is an "unwelcome obligation," which is necessary only when the governmental body is unable or unwilling to fulfill its legislative duties. *See Johnson v. Mortham*, 915 F.Supp. 1529, 1543 (N.D.Fla.1995) (*quoting Connor v. Finch*, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465 (1977) *and Reynolds v. Sims*, 377 U.S. 533, 586, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964)). Further, court-ordered plans are a temporary measure, and do not preclude the legislative body from devising a plan that better reflects its legislative judgment. *Ramos v. Koebig*, 638 F.2d 838, 844 (5th Cir.1981).[3] Therefore, if the Florida Legislature had created its own congressional redistricting plan, the court-drawn plan would not have been necessary. To permit the State Defendants to avoid liability for attorney's fees under these circumstances would seem to only reward them for abdicating their legislative responsibilities. More importantly, however, the fact that the state merely acted pursuant to federal regulation is not a special circumstance sufficient to preclude a fee award to prevailing plaintiffs under section 1988. *Martin v. Heckler, supra*, 773 F.2d at 1150. Accordingly, the State Defendants' argument that they should not be held liable because the *DeGrandy* Court created the challenged district must fail.

Defendant Sandra Mortham, as Florida's Secretary of State, further argues that she should not be liable for attorney's fees because she had absolutely nothing to do with the congressional districting, except to ministerially file and keep laws passed by the legislature. The Tenth Circuit addressed this same argument in *In re Kansas Con-*

---

3. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209, (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*gressional Dist. Reapportionment Cases,* 745 F.2d 610 (10th Cir.1984). In that case, the district court had awarded the prevailing plaintiffs attorney's fees under section 1988 against the Kansas Secretary of State. On appeal, the Secretary of State argued that special circumstances precluded an award against him because he had not taken any official action to enforce the unconstitutional congressional districts, and, in fact, had given assurances that he would file his own lawsuit to correct the situation. The Tenth Circuit rejected the Secretary's argument, reasoning that it "amount[ed] to no more than an assertion that he acted in good faith, which is not a special circumstance." *Id.* at 613. Moreover, "[f]ee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction." *Id.* at 612 (*quoting Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641, 658 (1980)); *see also Hastert v. Illinois State Bd. of Election Comm'rs,* 28 F.3d 1430, 1444 n. 16 (7th Cir.) ("It is of no consequence that the State Board of Elections played no active role in the proceedings and agreed to enforce whatever [congressional redistricting] plan the district court adopted, since fees may be taxed even against entities whose role is limited to enforcement of regulations they played no role in promulgating."), *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). That same rationale applies here.

Consequently, since Secretary of State Mortham was the enforcement official in charge of administering the election laws, the fact that she had nothing to do with the creation of District Three does not absolve her of responsibility for attorney's fees.

---

**4.** The *Ramos* Court reversed the decision of the district court to adopt a court-drawn plan without first affording the City Council the opportunity to adopt a legislative plan and obtain preclearance under section 5 of the Voting Rights Act. *Id.* at 844–45.

**5.** Alternatively, the Seguin City Council argued that special circumstance existed in their case because they were attempting to devise a new

Special circumstances also do not exist in this case based on the Plaintiffs' agreement with the Florida Legislature to abate the action brought against the Florida Legislature until this Court made its determination. In the "Stipulation of Abatement and to Abide Decree" (doc. 18), the Florida Senate and the Florida House of Representatives agreed with the Plaintiffs that the action brought against them:

> shall be abated until the court makes a determination of whether or not the current congressional districting plan, or any part thereof, is unconstitutional or violative of state or federal laws under the principles set out by the United States Supreme Court in *Shaw v. Reno,* or any other pertinent court rulings, and the Legislative Defendants further agree to abide by any judgment, order or decree entered in this matter . . .

Both the House and the Senate argue that since they did not actively oppose the Plaintiffs in this litigation, they should not be assessed the Plaintiffs' attorney fees.

In *Ramos v. Koebig, supra,* 638 F.2d at 838, the former Fifth Circuit addressed an award of attorney's fees under analogous facts. *Ramos* involved a lawsuit to force the redistricting the ward system in the City of Seguin, Texas. As a result of the plaintiff's suit, the City Council admitted the unconstitutionality of the plan adopted in 1962, and a court-drawn plan was implemented.[4] The Council argued that the plaintiffs were not "prevailing parties" under section 1988 because "the Council admitted to unconstitutionality of the 1962 plan and agreed to the injunction [prohibiting elections under that plan], and that the only disputed issue— whether the Council's plan or the plaintiffs' plan was preferable—was decided in favor of the Council."[5] *Id.* at 845. The *Ramos*

---

plan when the plaintiffs filed suit, and to allow the plaintiffs to recover attorney's fees for simply filing suit would unfairly penalize governmental bodies in the process of updating their election machinery to constitutional standards. *Id.* at 845–46. The *Ramos* Court rejected this argument, finding that had the plaintiffs not filed suit, the Council would not have devised and obtained preclearance for a new plan in time for the upcoming election. *Id.* at 845. Therefore, the

Court concluded, however, that the plaintiffs were prevailing parties and entitled to attorney's fees because "[a]s a direct result of plaintiffs' suit ... the City was prohibited from conducting the 1978 election under the unconstitutional plan. That the Council was in good faith is of no consequence." *Id.* In other words, "[t]hat the Council admitted the unconstitutionality of the 1962 plan, and consented to entry of the injunction, does not change [the] result [that the plaintiffs are prevailing parties entitled to attorney's fees.]" *Id.*

In this case, the Florida Legislature did not admit to the unconstitutionality of Florida's Third Congressional District, but simply agreed with the plaintiffs to hold the action in abeyance until the Court determined whether the district was constitutional. Further, absent a court ruling, it seems clear that the Florida Legislature would have taken no action to remedy the constitutional infirmities of District Three. Therefore, the fact that the Plaintiffs and the Florida Legislature agreed to hold the action in abeyance is not a special circumstance which would make an award of attorney's fees unjust.

### (2) *Plaintiffs' failure to comply with Local Rule 54.1*

 Finally, the issue of Plaintiffs' counsel's failure to comply with Local Rule 54.1 must be addressed. Subsection (B) of the Rule provides, in relevant part:

> **(B) Attorneys' Fees Records.** In any proceeding in which any party is seeking an award of attorneys' fees from the opposing party pursuant to any statute, contract, or law, the party seeking such an award of attorneys' fees shall:
>
> (1) Maintain a complete, separate, and accurate record of time (to the nearest ⅒ of an hour) devoted to the particular action, recorded contemporaneously with the time expended, for each attorney and each specific activity involved in the action (*i.e.,* not just "research" or "conference");

> (2) File a summary of such time record with the clerk by the fifteenth (15th) day of each month during the pendency of the action, for work done during the preceding month.
>
> (3) If a claim will be made for services performed by any person not a member of the bar, a separate time record shall be maintained for each such individual and filed as specified below, together with the hourly rate at which such person is actually reimbursed.
>
> \* \* \* \* \* \*
>
> (5) Failure to comply with these requirements will result in attorneys' fees being disallowed for the omitted period.

N.D.Fla.Loc.R. 54.1(B). Plaintiffs' counsel failed to file any of his attorney time records until August 20, 1996.

Notwithstanding the plain language of Rule 54.1, Plaintiffs' counsel states that he was unaware that Rule 54.1 applied to the present cause. However, the most recent version of the Local Rules provides: "The appended rules shall, within their scope, *govern all proceedings* in the Northern District of Florida after 12:01 A.M., Eastern Standard Time, April 1, 1995. *All existing rules are revoked upon said effective date.*" *In Re: 1995 Revision of Rules of Court* (N.D.Fla. Jan. 23, 1995) (emphasis added) (included as forward to Local Rules). Ordinarily, the fact that counsel was unaware of the existence of Local Rule 54.1 is no excuse for failure to comply with it. The Local Rules put counsel on constructive notice of all procedural requirements and time limitations utilized in this Court. *Cf. United States v. Cannistraro,* 694 F.Supp. 62, 76 (D.N.J.1988) ("Parties, especially when represented by counsel, should be considered to have constructive notice of the applicable local rules."), *aff'd in part, vacated in part on other grounds,* 871 F.2d 1210 (3d Cir.1989), *cert. denied,* 500 U.S. 916, 111 S.Ct. 2011, 114

Fifth Circuit held that were no special circumstances in the case which would render an award of attorney's fees unjust: "To deny a successful plaintiff attorneys' fees in these circumstances would do violence to the remedial spirit of both the Voting Rights Act and the Awards Act." *Id.* at 846.

L.Ed.2d 98.[6]

Furthermore, the Eleventh Circuit has repeatedly upheld lower court rulings denying attorney's fees to parties failing to comply with local rules governing motions for attorney's fees. For example, in *Zaklama v. Mount Sinai Medical Center*, 906 F.2d 645 (11th Cir.1990), the lower court had denied a prevailing plaintiff's motion for attorney's fees under section 1988 because of the plaintiff's failure to comply with a Southern District of Florida local rule governing such motions. On appeal, the Eleventh Circuit determined that a local rule of court could establish time limits for motions for attorney's fees, but in so doing would have to explicitly state that it is applicable to claims for attorney's fees. *Id.* at 647. Finding that the Southern District of Florida rule met this standard, the Eleventh Circuit affirmed. *Id.* at 650. The Eleventh Circuit has reached similar conclusions in other cases. *See, e.g., Quick v. Peoples Bank of Cullman County*, 993 F.2d 793, 799 (11th Cir.1993); *Meadows By and Through Meadows v. Cagle's, Inc.*, 954 F.2d 686, 694 (11th Cir.1992).

■ In this case, the applicable rule is plainly captioned "Motion for Attorneys' Fees." The language of the rule establishes time requirements for all motions for attorney's fees. *See* N.D.Fla.Loc.R. 54.1(A). Subsection (B) of the rule provides detailed instructions on when and how attorney's fees time records are to be filed. Thus, it is obvious that failure to timely comply with the filing requirements under Local Rule 54.1 can result in a denial of a motion for attorney's fees.

■ In this case, however, we must conclude that there are several extenuating circumstances, which, when taken together, partially excuse the noncompliance of Plaintiff's counsel. First, the scheduling order in this case was not entered until late in the litigation, and, contrary to the customary practice of this Court, the scheduling order as finally entered omitted reference to this procedure and failed to alert counsel to the existence of this filing requirement. (doc. 101, entered on Dec. 13, 1995). Plaintiffs filed their complaint on January 21, 1994— over fourteen months prior to the effective date of the Local Rule 54.1. The present Rule 54.1 is entirely new, and had no preexisting counterpart in the older version of the local rules. Therefore, there was nothing to put Plaintiffs' counsel on actual or constructive notice of this Court's usual practice regarding the filing of attorney's fees records until Local Rule 54.1 went into effect on April 1, 1995. Apparently, the official publication of the extensive 1995 revisions to the Local Rules for the Northern District of Florida by West Publishing Company did not come about until sometime in 1996. Thus, Plaintiffs' counsel asserts that he relied upon what he believed were the current 1995 Local Rules, when they actually were not.

Moreover, as discussed above, Local Rule 54.1 was adopted mid-stream in this litigation, so its application to this case was not fully clear. This is especially true in light of the nature of this three-judge proceeding. On March 15, 1994, Chief Judge Tjoflat of the Eleventh Circuit Court of Appeals appointed a three judge panel which included, as it must, a Circuit Judge of the Eleventh Circuit, Judge Hatchett. (doc. 15). Therefore, the application of the Local Rules of the Northern District of Florida in this unusual case of statewide implication and of Eleventh Circuit composition was somewhat uncertain. The Court contributed to this uncertainty by failing to follow its customary practice of immediately entering its standard scheduling order at the time the Defendants filed their responsive pleadings, which would have specifically alerted Plaintiffs' counsel of the attorney's time filing requirement.

■ Finally, it is not insignificant that "[t]he purpose of the Attorney's Fees Awards Act [Title 42, United States Code, Section 1988] is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations." *Dowdell v. City of Apopka, su-*

---

**6.** *See also Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988) (local rules provide notice to a non-moving party of the time requirements for filing a responsive memorandum to a dispositive motion); *Simon v. Kroger Co.*, 743 F.2d 1544, 1546–47 (11th Cir. 1984) (same), *cert. denied*, 471 U.S. 1075, 105 S.Ct. 2155, 85 L.Ed.2d 511 (1985).

*pra*, 698 F.2d at 1189.[7] To deny Plaintiffs any fees under these circumstances would reward the State Defendants for their reluctance to engage in the redistricting process, by the propitious failure of Plaintiffs' counsel to make his attorney records filings in a timely manner.

We hasten to add, however, that our holding is strictly limited to the peculiar facts of this case. The penalty for noncompliance with Local Rule 54.1 is clearly set forth in the rule: Failure to comply "will result in attorneys' fees being disallowed for the omitted period." Some sanction of attorneys who fail to comply is required. It is only because of the confluence of the most unique circumstances in this case that we partially excuse counsel's noncompliance here.

We also have been mindful of the severity of a sanction which would have denied the Plaintiffs any attorney fee recovery. A lesser sanction, taking into account the matters discussed above, is more just under the totality of the circumstances presented here. Therefore, we will reduce the Plaintiffs' attorney fee request by twenty-five percent (25%), but allow an award of seventy-five percent (75%) of the amount of attorney fees (exclusive of costs and expenses which are recoverable as part of an attorney's fee under section 1988, as discussed below) to which the Plaintiffs would otherwise be entitled to receive.

### (3) *Recoverable costs and expenses under Section 1988.*

 An award of attorney's fees under section 1988 also includes various costs and expenses, over and above those outlined in

Title 28, United States Code, Section 1920,[8] the general statute for taxation of costs.[9] For example, section 1920 does not provide for taxation of the general expenses incurred by an attorney, such as travel expenses, telephone charges, or photocopying costs, nor does it include expert witness fees in excess of the limited expenses allowed for any witness.

Under section 1988, however, the prevailing party is entitled to recover much more in the way of litigation expenses: " '[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988' and 'the standard of reasonableness is to be given a liberal interpretation.' " *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir.1987) (alteration in original) (*quoting Dowdell v. City of Apopka, supra*, 698 F.2d at 1192). In other words, any expenses incurred during the course of litigation which are normally billed to fee-paying clients should be taxed under section 1988.[10] *See Abrams v. Lightolier*, 50 F.3d 1204, 1225 (3d Cir.1995); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir. 1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); *Dowdell v. City of Apopka, supra*, 698 F.2d at 1190. Therefore, "[t]he standard necessarily involved a case-by-case balancing of relevant factors. The guideline of what is includable must be

---

**7.** Nevertheless, the fact that an award of attorney's fees is made mandatory by a statute such as section 1988 does not, in and of itself, obviate the requirement to fully comply with the requirements set out in the Local Rules. *See Quick v. Peoples Bank, supra*, 993 F.2d at 799.

**8.** Section 1920 provides, in relevant part:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshall;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses; [and]

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case. . . .

**9.** As discussed in part II(B), *infra*, all of those costs taxable under section 1920 shall be taxed against the United States.

**10.** As discussed *infra*, the recovery of litigation expenses is qualified by *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 102, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68, 85 (1991), in which the Supreme Court of the United States held that section 1988 does not convey any authority to shift expert fees.

that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Dowdell v. City of Apopka, supra,* 698 F.2d at 1192.

■ We conclude that the Plaintiffs are entitled to recover their reasonably incurred costs and expenses, other than expert witness fees, under section 1988.[11]

## B. *Liability of the United States for Expert Witness Fees.*

The Plaintiffs have also moved to tax their expert witness fees against the United States. The Plaintiffs rely on Title 28, United States Code, Section 2412(b), the Equal Access to Justice Act ("EAJA"), which provides:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a) [which allows taxable costs], to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

As discussed above, the Plaintiffs clearly prevailed in the underlying action. *See Johnson v. Mortham,* 926 F.Supp. 1460 (N.D.Fla. 1996). However, Plaintiffs are not entitled to an award of costs under the EAJA.

■ As the United States points out, Plaintiffs have failed to cite to a statutory basis that "specifically provides" for an award of expert witness fees.[12] It is apparent that the plaintiffs cannot recover expert witness fees under section 1988. In *West Virginia Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 102, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68, 85 (1991), the Supreme Court held that section 1988 conveyed no authority to shift expert witness fees. In the Civil Rights Act of 1991, Congress responded to this decision by amending section 1988 to provide for expert fees in an "action or proceeding to enforce a provision of section 1981 or 1981a." *See* 42 U.S.C. § 1988(c). However, for the other civil rights statutes to which section 1988 applies, Congress left intact the Supreme Court's ruling in *Casey.* Therefore, because this was not an action or proceeding to enforce a provision of section 1981 or 1981a, section 1988 does not provide for expert witness fees against the United States.[13] *Cf. Davis v. Mason County,* 927 F.2d 1473, 1487 (9th Cir.) ("Under *Casey,* the district court may not use section 1988 as a basis to award expert witness fees in excess of the limits impose by 28 U.S.C. §§ 1821 and 1920."), *cert. denied,* 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991).

To the extent that any expert witness costs may be taxed against the United States under Title 28, United States Code, section 2412, the amount of those costs is outlined in Title 28, United States Code, sections 1821

---

11. Apparently, the Eleventh Circuit has not had an occasion to deal with what is included in an award of expenses under section 1988 since the Supreme Court's decision in *Casey, supra,* n. 10. We believe the reasonable costs and expenses include: reproduction expenses, telephone expenses of the attorney, travel time and expenses of the attorney, and postage. *See infra* n. 13. This recovery is separate from the calculation of attorney's fees, and there is no local rule setting out monthly filing requirements for such costs and expenses. Therefore, it will not be subject to the 25% reduction applicable to the attorney's fee award.

12. *See generally Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 439, 107 S.Ct. 2494,

2496, 96 L.Ed.2d 385 (1987) ("when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary").

13. As the Third Circuit noted in *Abrams v. Lightolier,* 50 F.3d 1204 (3d Cir.1995), in light of *Casey* only a few narrow categories of expenses may be recovered as part of a reasonable attorney fee under 42 U.S.C. § 1988(b): reproduction expenses, telephone expenses of the attorney, travel time and expenses of the attorney, and postage, to the extent "it is the custom of attorneys in the local community to bill their clients separately for them." *Id.* at 1225–26 (collecting citations).

and 1920. *See generally In re Philadelphia Mortgage Trust,* 930 F.2d 306, 307–08 (3d Cir.1991) (in absence of other authority for taxing expert witness fees or costs, such costs are governed by general statute on taxing of costs). In *Crawford Fitting Co. v. J.T. Gibbons, Inc., supra,* the Supreme Court held that the combined effect of sections 1821 and 1920 allows a court to tax expert witness fees only up to the limit set out in section 1821(b). 482 U.S. at 442, 107 S.Ct. at 2497–98. *Cf. Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981) ("The usual rule in civil litigation in federal courts is that ... experts are compensable only at the same rate as other witnesses."), *amended on other grounds,* 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993, *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Section 1821 restricts such costs to $40 per day, in addition to limited subsistence and travel allowances. 28 U.S.C. § 1821; *National Bancard Corp. v. VISA, U.S.A., Inc.,* 112 F.R.D. 62, 66 (S.D.Fla.1986). Plaintiffs cannot recover any expert witness costs beyond those amounts. *E.g., Glenn v. General Motors Corp.,* 841 F.2d 1567, 1574–76 (11th Cir.), *cert. denied,* 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988); *Ray v. Department of Justice,* 856 F.Supp. 1576, 1584–85 (S.D.Fla.1994), *aff'd,* 87 F.3d 1250 (11th Cir.1996).

 The Plaintiffs have filed their Bill of Costs (doc. 202).[14] The United States intervened early in this case, and acted as a party-defendant. It has acknowledged its status as a party in the case. Without question, the United States led the opposition to the plaintiffs' constitutional challenge in this litigation, and vigorously defended Florida's Third Congressional District. Therefore, since the State Defendants are being held responsible for plaintiffs' attorney fees, we hold that those costs which are taxable under section 1920 shall be taxed only against the United States.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

(1) Plaintiffs' motions for costs and attorney's fees against the State Defendants (doc. 201, 213, & 216) as amended (doc. 250) are GRANTED as to liability, but subject to a 25% reduction of the attorney's fee award to which they would otherwise be entitled to receive as a sanction.

(2) Plaintiffs' motion for expert witness fees against the United States (doc. 205) is DENIED.

(3) Plaintiffs' Bill of Costs (doc. 202), to the extent that those costs are taxable under Title 28, United States Code, Section 1920, shall be taxed by the Clerk against the United States.

(4) Having determined all issues of liability for attorney's fees and costs, the second phase of the bifurcated proceeding shall commence in accordance with the procedures set forth in Local Rule 54.1(E) and (F).

(5) The motions to strike plaintiffs' filings (doc. 281, 283, and 288) are DENIED as moot.

**DONE AND ORDERED.**

HATCHETT, Chief Circuit Judge, concurring in part, dissenting in part.

The plaintiffs in this action seek attorney's fees and costs against the defendants, under Title 42, United States Code, Section 1988. To warrant an award of attorney's fees and costs, the plaintiffs must establish that they are the "prevailing parties." The majority of this three-judge court has found that plaintiffs have met the prevailing party standard; therefore, the majority's finding dictates the ruling—the plaintiffs are prevailing parties.

I dissent, however, from the majority's ruling on the application of the Northern District of Florida's Local Rule 54.1, which governs motions for attorney's fees because the plaintiffs' counsel failed to comply with the filing requirements for attorney's fees under Local Rule 54.1. Noncompliance with Local Rule 54.1 mandates a disallowance of attorney's fees for the "omitted period." N.D.Fla.Loc.R. 54.1(B). Instead of following the plain language of Local Rule 54.1, the majority imposes a lesser sanction, a twenty-

---

14. The Bill of Costs is on the standard form utilized by United States District Courts to tax costs. The Clerk routinely taxes costs against the losing party upon court authorization. Here, the plaintiffs' filed Bill of Costs does not identify any specific party to be taxed against.

five percent reduction of the plaintiffs' attorney fee request. Because strict obedience to Local Rule 54.1 is of importance in the troublesome area of attorney's fees, I dissent from this portion of the majority opinion. The majority's reasons for minimizing the sanction against the plaintiffs for noncompliance with Local Rule 54.1 are not convincing.

Accordingly, because the majority's vote establishes the law of the case, the prevailing party finding is binding on me. Nevertheless, I dissent from the ruling regarding sanctions.