## In re METROPOLITAN METALS, INC., Debtor.

**Bankruptcy No. 79–318.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Oct. 2, 1998.

Natalie D. Ramsey, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for KPMG Peat Marwick LLP.

John A. Noonan, Bridgewater, MA, for Joseph & Caroline Enos.

Stephen A. Moore, Edward Rothman, Harrisburg, PA, for trustee.

Charles DeHart, III, Trustee in Bankruptcy, Hummelstown, PA.

Angelo Frattarelli, U.S. Dept. of Justice, Washington, D.C., for U.S., I.R.S.

Robert L. Knupp, Knupp & Kodak, P.C., Harrisburg, PA.

## OPINION

JOHN J. THOMAS, Bankruptcy Judge.

On May 9, 1997, the accounting firm of KPMG Peat Marwick LLP filed its Final Application for allowance as accountant for the estate. Objections have been filed by Joseph and Caroline Enos challenging the Application. While I find most of the grounds for objection lacking merit, I am concerned about the "nexus" that may or may not exist between the applicant and the original appointee.[1]

On June 26, 1981, the accounting firm of Main, Hurdman & Cranstoun was retained by the bankruptcy trustee, Charles DeHart, to perform various services, including the winding up of previous accounting services, the filing of tax returns, and generally assisting the Trustee with books of account (Docs. # 320 and # 323). The Order appointing that firm was executed pursuant to then-existing Bankruptcy Rule 215(a), which required that the employ of an accountant be authorized by court order. Since that time, fourteen (14) applications for compensation

---

1. Enos has objected on the grounds that: "(i) the Applicant has failed to comply with Bankruptcy Rule 2002(a) requiring twenty-day notice to *all* parties in interest, (ii) the compensation in the amount of $26,829.63 in Applicant's prayers for relief represents, on its face, an illegal double compensation, (iii) Applicant's 'final application' is nothing more than a thinly veiled means to circumvent and to evade the pending proceedings related to vacating the judicial acts of a disqualified Court (re. **Docket 847** and **1276**) and which proceeding is set for hearing on June 3, 1997, and (iv) the supporting Affidavit of Stephen M. Hoffman is ineffective to establish the Applicant's nexus of appointment because, other than presenting a disjointed historical progression of merger, the affiant lacks the competence in the area of Applicant's corporate structure."

The Court finds the Notice circulated as set forth in Certificate of Service filed to Document # 1312, to be adequate.

The amended Application filed by KPMG (Doc. # 1342) makes clear that the accountant is not seeking double compensation.

Recently, the judicial acts of the alleged "disqualified" Court have been reaffirmed by this Court. (Doc. # 1468).

have been submitted under that authorization.[2]

According to the Affidavit of Steven M. Hoffman, partner, filed May 9, 1997, the Main, Hurdman & Cranstoun firm changed its name to Main Hurdman (Doc. # 1313). Thereafter, Main Hurdman was acquired by Peat Marwick Mitchell & Co. At the time of the hearing, W. Hoffman testified that, technically, the firms were merged with the partners of Main Hurdman becoming partners of the new entity, now known as Peat Marwick Main & Co. The term acquisition was used in the Affidavit to underscore the fact that Peat Marwick was the larger entity. Thereafter, Peat Marwick Main & Co. changed its name to KPMG Peat Marwick. That firm became a limited liability partnership in 1994 and changed its name to its current designation of KPMG Peat Marwick LLP.

The issue, of course, is whether the original order appointing Main, Hurdman & Cranstoun is sufficient to authorize a final allowance to KPMG Peat Marwick LLP despite the absence of an order appointing that firm.

While testimony has been taken, neither side has briefed the issue.

■ As has been indicated in prior opinions, the current bankruptcy rules apply to pending Act cases, unless equitable considerations suggest otherwise. *In re Blue Coal Corp.*, 166 B.R. 816, 819 (Bankr. M.D.Pa.1993). In regard to the relevant issues, the rules in effect in 1981 have basically remained unchanged by their current counterpart. Rule 215(a) requires prior court approval if the trustee chooses to hire an accountant, as does current Federal Rule of Bankruptcy Procedure 2014(a). Both Rule 215(f) and current Federal Rule of Bankruptcy Procedure 2014(b), in virtually identical language, authorize any partner, member, or regular associate of an accounting partnership or corporation that has been appointed to act as accountant for the estate, "without further order of the court." This would suggest a certain flexibility in permitting professional services by individuals not necessarily contemplated in the original order of the court.

In Mr. Hoffman's Affidavit, it was averred that Main Hurdman has become the "successor" to the original appointee, Main, Hurdman & Cranstoun. In 1987, Main Hurdman was acquired by Peat Marwick Mitchell & Co., who then changed their name to Peat Marwick Main & Co. While all the partners of Main Hurdman became partners of the new company, little explanation was given the Court as to the nature of the succeeding entity. The Court is unaware of its business structure, membership, or, for that matter, its connections with parties in interest as required by Rule 215(a). Thereafter, Peat Marwick Main & Co. changed its name to KPMG Peat Marwick. In 1994, a limited liability partnership was formed resulting in the most recent name change to KPMG Peat Marwick LLP. (Affidavit of Steven M. Hoffman, filed May 9, 1997 (Doc. # 1313).) Again, the Court has been left in the dark as to the firm's membership, or its connections with parties in interest. KPMG argues that the transition from Main, Hurdman & Cranstoun to KPMG Peat Marwick LLP is merely an evolution of one entity from one era to another.[3] I decline to see it that way.

■ Court approval of a professional has been deemed essential "in order that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency con-

---

2.  # 497—Application filed October 12, 1984;
    # 534—Application filed July 11, 1985;
    # 664—Application filed November 14, 1986;
    # 693—Application filed February 19, 1988;
    # 733—Application filed October 13, 1989;
    # 748—Application filed March 7, 1990;
    # 760—Application filed October 16, 1990;
    # 777—Application filed March 15, 1991;
    # 792—Application filed March 3, 1992;
    # 798—Application filed March 25, 1993;
    # 803—Application filed March 7, 1994;

    # 835—Application filed April 7, 1995;
    # 913—Application filed May 24, 1996; and
    # 1311—Final Application filed May 9, 1997.

3.  In fact, thrice during the application procedures, applications were advanced as "Main Hurdman" while the firm was doing business as Peat Marwick Main & Co. (See Applications filed October 13, 1989 (Doc. # 733), March 7, 1990 (Doc. # 748), and October 16, 1990 (Doc. # 760).)

cerning the same." *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203, 205 (3rd Cir.) (in banc), *cert. denied*, 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969). Advanced court approval was thought to be a necessary check to prevent abusive practices and the "cronyism" that existed in an earlier era. *In re Philadelphia Mortgage Trust*, 930 F.2d 306, 309 (3rd Cir.1991); *Matter of Arkansas Co.*, 798 F.2d 645, 649 (3rd Cir.1986). A successor company, as well as a merged company, may not be the same entity whose qualifications were reviewed by the court. "[T]he merger of two corporations contemplates that one corporation will be absorbed by the other and will cease to exist while the absorbing corporation remains." 19 C.J.S. Corporations § 807 at 465 (1990). Moreover, the Court would have no advance information as to the disinterestedness of the succeeding firm. This is not to say that KPMG, and probably thousands of other accountants, were not qualified to do the tax returns required by the Trustee. The Court, however, has a right and a duty to pass on these applications for appointment in advance of the professional performing the work. While the rules contemplate that partners and associates will come and go, the rules do not contemplate that entire entities can be gobbled up by other entities and retain their privilege to perform services to a bankrupt estate. In order to perform those tasks, I see no alternative but that a new application be filed for the superseding entity. In the absence of such an application, the Court would have little choice but to deny the request for allowance of fees. *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3rd Cir.1988).

▬ KPMG, however, has requested alternative relief in the form of a request for appointment, nunc pro tunc. (Answer by KPMG Peat Marwick LLP of 08/19/97 at 3 (Doc. # 1389).) Such a nunc pro tunc appointment is within the range of powers of the bankruptcy court in cases where prior approval would, otherwise, have been granted.[4] *In re Arkansas*, 798 F.2d 645, 650 (3rd Cir.1986). An exercise of that power has been severely restricted to "extraordinary circumstances." *Id.* Mere neglect is insufficient to be considered an extraordinary circumstance. *Id.* In an effort to identify a nonexclusive list of factors for a court to consider, the *Arkansas* Court articulated the following:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties . . .

*Id.*

▬ The record upon which I rely, does not allude to time pressure playing a role in this issue. Until the hearing on the Ninth and Final Applications, no party had raised the issue of KPMG's failure to be specifically appointed. A review of the extensive Metropolitan record would clearly identify KPMG's role in this estate to any party that cared to explore it. On June 26, 1981, Main Hurdman & Cranstoun was appointed to perform various services on behalf of the Trustee. In every fee application thereafter, whether it was submitted by Main Hurdman,[5] Peat Marwick Main & Co.,[6] KPMG Main Hurdman [7], KPMG Peat Marwick [8], or KPMG Peat Marwick LLP [9], the

---

4. The record adequately demonstrates the competence as well as the disinterestedness of KPMG. See Audio tape of hearings held in the U.S. Bankruptcy Court for the Middle District of PA (Aug. 19, 1997) (on file with ECRO) and Affidavit of Steven M. Hoffman Regarding Disinterestedness of KPMG Peat Marwick LLP filed 5/9/97 (Doc. # 1313).

5. # 497—Application filed October 12, 1984 and
# 534—Application filed July 11, 1985.

6. # 693—Application filed February 19, 1988. (Bill statement reflects both Peat Marwick Main & Co. and KPMG Peat Marwick.)

7. # 664—Application filed November 14, 1986.

8. # 693—Application filed February 19, 1988;
# 733—Application filed October 13, 1989;
# 748—Application filed March 7, 1990;
# 760—Application filed October 16, 1990;
# 777—Application filed March 15, 1991;
# 792—Application filed March 3, 1992;
# 798—Application filed March 25, 1993; and
# 803—Application filed March 7, 1994.

9. # 835—Application filed April 7, 1995;
# 913—Application filed May 24, 1996; and
# 1311—Final Application filed May 9, 1997.

services appear to be limited to the preparation of the annual tax return and a minimal amount of other activity. Their work, although necessary, did not appear to play a central role in the administration of the case. *In re Madison Management Group Inc.*, 137 B.R. 275 (Bkrtcy.N.D.Ill.1992) (holding that a certified public accountant hired to assist in liquidation of a Chapter 11 debtor's assets was not a professional under the Code). The Application for Appointment as Accountant was made by counsel for the Trustee. Until the Final Application filed May 9, 1997, being the fourteenth under the original Order of appointment, the request for payment of fees were all made by counsel to the Trustee, Attorney Robert Knupp, and not the accounting firm. This suggests that, by agreement of the parties, the Trustee bore primary responsibility for applying for the necessary approvals. All fee applications filed by the accountants referenced themselves as the successor to Main Hurdman. It was not until the Final Application that a challenge was made as to lack of an order of appointment. (See Objection by Joseph & Caroline Enos filed 05/23/97 (Doc. # 1331).)

As far as the Court is aware, this is a matter of first impression. As such, it was an arguable position for the accounting firm to maintain that no authorization beyond the original appointment was required. For a period of seventeen years, these accounting firms provided valuable services to the estate for which they were regularly compensated after Court review.

■ As pointed out by the *Arkansas* Court, "[t]he bankruptcy courts have traditionally been governed by equitable principles rather than statutory technicalities. Where equitable concerns weigh in favor of granting retroactive approval to enable deserving professionals to recover compensation for work actually done, we see nothing in the statute that denies the bankruptcy court the power to grant such retroactive approval." *In re Arkansas*, 798 F.2d 645, 648 (3rd Cir.1986) (citations omitted).

I conclude that Court approval of successive interim fee applications over the course of almost two decades have lulled KPMG into the belief that no further application was required of them. While that position is hereby deemed to be not well taken, it was, arguably, supportable. By analogy, in *United States on Behalf IRS v. Norton*, 717 F.2d 767 (3rd Cir.1983), the Third Circuit posited that a party should not be punished under an ambiguous provision unless first given "fair warning" by the courts that an activity is forbidden. *Id.* at 774. To deprive KPMG from compensation under the unique facts of this case would achieve little by way of policy and reflect poorly on the Court's ability to terminate, in an equitable fashion, this 19 year old case. Nevertheless, my holding serves as fair warning of the need, in the future, for professionals to reapply for appointment should the character of their firm change in any but a nominal manner.

For these reasons, I hereby allow compensation and costs to KPMG Peat Marwick LLP in the full amount of their request.